# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00480-CR

**Wenceslao Fonseca, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. 2012473, HONORABLE MICHAEL J. MCCORMICK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Wenceslao Fonseca appeals his conviction by a jury for felony assault with family violence and his sentence of ten years' confinement. In three issues, he argues that (1) the victim's oral statement to police was admitted in violation of the hearsay rule and his sixth amendment right of confrontation, (2) his trial counsel provided ineffective assistance, and (3) the evidence is factually insufficient to support his conviction. We will affirm.

## BACKGROUND

At 11:52 p.m. on December 2, 2001, Dianna Nuncio[1] called 911. Travis County deputy sheriffs Guillermo Martinez and Demetrio Medina were dispatched to Nuncio's home. The

---

[1] A few weeks before trial, Nuncio married Fonseca by proxy and changed her last name to Fonseca. *See* Tex. Fam. Code Ann. § 2.006 (West 1998). We will refer to her as Nuncio in order to distinguish between her and appellant.

911 operator notified them that a family disturbance was in progress and gave them a description of Fonseca. The operator also told them that Nuncio reported that Fonseca was intoxicated, that he had slapped Nuncio and broken her vehicle's windshield with a sledgehammer, and that Fonseca had cut his wrist two weeks ago and would probably tell the police that Nuncio had inflicted the wound.

The deputies arrived at the scene at approximately 11:59 p.m. Martinez observed Fonseca standing next to a vehicle in the front yard. Nuncio and her two children were inside a white vehicle in the driveway. The white vehicle had a shattered windshield and damage to the hood and right fender. Fonseca was raising his arm in the air, exclaiming that Nuncio had cut him. Martinez asked Nuncio about Fonseca's claims, and she told him that Fonseca had been in a previous accident that caused the wound.[2]

Deputy Medina testified that as soon as he got out of his car, he noticed that the white car had "some pretty serious damage to it." Specifically, "there was a fairly large dent on the hood and the windshield on the driver's side, directly in front of the steering wheel, had a big hole in it and the window was smashed." The fender had also been significantly damaged.

Nuncio told Medina that she had been sleeping in her bed with her two daughters when Fonseca returned home intoxicated and demanded that Nuncio go with him to another bedroom. After she refused, he grabbed her t-shirt and began pulling her out of the bed. Nuncio's daughters woke up and began yelling at Fonseca, but he dragged Nuncio into the kitchen where he grabbed her hair with one hand and squeezed her jaw with his other hand. Eventually, Nuncio broke free, and she and her daughters ran outside to the car. After struggling with Fonseca at the car,

---

[2] Sergeant Darren Long testified that the cut on Fonseca's arm appeared to be an old injury that had some scabbing but had just been reopened.

2

Nuncio managed to get inside with her daughters; Fonseca remained outside kicking and hitting the car. Nuncio recounted that, after getting the door open, he again grabbed her by the hair and slapped her three or four times before Nuncio could close the car door. Nuncio attempted to start the car to flee. Fonseca retrieved a sledgehammer from his truck, stood in front of Nuncio's car, and slammed the hood of the car with the sledgehammer. He then swung the sledgehammer at the windshield in front of the steering wheel. Nuncio began to drive away, sideswiped another vehicle,[3] and stopped to call 911.

Nuncio told Medina that she had pain and soreness in her head, jaw, neck, and left arm. Medina observed that Nuncio's shirt was torn and that the vehicles had been damaged consistent with Nuncio's oral statement. Later that night, Nuncio gave a written statement, which was substantially identical to her description of events to Medina.

Fonseca was arrested and indicted for aggravated assault and felony assault with family violence. At trial, deputies Martinez and Medina testified about what they had seen and heard the night of the incident. Over Fonseca's objection, Medina also testified about Nuncio's oral statement to him. Fonseca called Nuncio to testify, and she recanted her previous statements. She testified that she was the one who had harmed Fonseca and that he was innocent of the assault charges.[4] A jury found Fonseca not guilty of aggravated assault but guilty of felony assault with family violence, and after hearing evidence of other convictions, sentenced him to ten years'

---

[3] Nuncio told Medina that she hit the vehicle because she could not see due to the damage to the windshield.

[4] Nuncio also claimed that she did not realize her written statement was made under oath and that she wrote it because she was tired and wanted the police to leave.

confinement.  *See* Tex. Pen. Code Ann. §§ 12.34, 22.01(b)(2) (West 2003 & Supp. 2005).  This appeal followed.

## DISCUSSION

In three issues, Fonseca contends that the trial court erred by permitting Medina to testify about Nuncio's oral statement, that his trial counsel provided ineffective assistance, and that the evidence is factually insufficient to support his conviction.

### Admission of Nuncio's oral statement to Medina

In his first issue, Fonseca argues that Nuncio's statement to Medina was improperly admitted in violation of the hearsay rule and his sixth amendment right of confrontation.  *See* U.S. Const. art. VI; Tex. R. Evid. 802.  There is no dispute that Medina's testimony was hearsay; our inquiry is whether the excited utterance exception applies.  *See* Tex. R. Evid. 803(2).

#### *Hearsay*

We will not reverse a trial court's decision to admit evidence over objection absent a clear abuse of discretion.  *Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005) (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)).  The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement.  *Id.* (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule.  *See* Tex. R. Evid. 802; *Apolinar*, 155 S.W.3d at 186.  However, there is an exception for an excited utterance, which is defined as "[a] statement relating

4

to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See* Tex. R. Evid. 803(2); *Apolinar*, 155 S.W.3d at 186. The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information. *Apolinar*, 155 S.W.3d at 186. To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement was made. *Id*. (quoting *Zuliani*, 97 S.W.3d at 596); *see Lagunas v. State*, No. 03-03-00566-CR, 2005 Tex. App. LEXIS 6957, at *23 (Tex. App.—Austin August 26, 2005, pet. filed). Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Id*. (citing *Zuliani*, 97 S.W.3d at 595-96). No single factor is dispositive but bears on our ultimate determination. *Zuliani*, 97 S.W.3d at 596; *see also Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995).

Fonseca acknowledges that "[c]learly, a startling event had occurred" and that "[s]everal facts corroborate the existence of a recent dramatic episode." However, he urges us to find that Nuncio's statement was not an excited utterance but was "indicative of reflection" because Nuncio told both the 911 operator and Medina that Fonseca would claim she cut him but that it was not true. Furthermore, Medina's report states that the girls were "afraid, crying, [and] upset" but does not state that Nuncio was "hysterical" or "nervous." He argues that although "the time frame between the event's conclusion and the statement was a mere handful of minutes," Nuncio's injuries did not require medical attention, she was able to call 911 without his interference, and by the time

police arrived she had already separated herself from Fonseca. These facts, he concludes, do not justify admission of the hearsay under the excited utterance exception.

Nuncio called 911 at 11:52 p.m. Deputies Martinez and Medina were dispatched to the scene and were told that the incident was in progress; they arrived at 11:59. When Medina arrived, he saw Fonseca, Nuncio, and Nuncio's two young daughters. As he approached Nuncio and the girls, he observed that "[t]hey were all pretty hysterical. They were crying. And all three huddled together, kind of hugging each other." Right away, Medina noticed that Nuncio was visibly injured. Fonseca was standing nearby and "was, in a very loud voice and swinging his arms around in the air, he was yelling at us that she had cut him in the arm."

Two or three minutes after the police arrived—approximately ten minutes after the assault occurred—Medina asked Nuncio what had happened. Medina noted that when he approached her, she was "still crying, still very upset, and appeared to be extremely afraid"; she "most definitely" appeared to be "under the stress of an excited event." Approximately twenty minutes after the deputies arrived, sergeant Darren Long took Nuncio's written statement. Long testified that at the beginning of Nuncio's statement, "it looked like she was still traumatized and shaking and looked like she had been crying."

The fact that Medina did not expressly identify Nuncio as "hysterical" on the police report is not dispositive. Nuncio's oral statement was made approximately ten minutes after the 911 call and two or three minutes after police arrived. Medina testified that when police arrived, Nuncio and her daughters were hysterical, crying, and huddled together, hugging each other. Fonseca was nearby, yelling that Nuncio had cut him. Under these circumstances, we hold that there is sufficient evidence that Nuncio was still dominated by the emotions, excitement, fear, or pain of the assault

6

when her oral statement was made. Thus, the excited utterance exception applied. *See* Tex. R. Evid. 803.

Furthermore, even if the excited utterance exception did not apply, the improper admission of evidence is not reversible error when substantially the same facts are proven by unobjected-to testimony. *See Burks v. State*, 876 S.W.2d 877, 898 (Tex. Crim. App. 1994); *Anderson v. State*, 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986); *Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.—Austin 2001, pet. ref'd).

In addition to Medina's testimony regarding what Nuncio told him, he also testified about what the 911 operator was told by Nuncio and what the operator reported to the deputies. Fonseca did not object to this testimony. Moreover, Medina, Long, and Nuncio testified without objection about the contents of Nuncio's written statement. We hold that the trial court did not abuse its discretion in permitting Medina to testify about Nuncio's description of the incident. Alternatively, any error was not reversible because substantially the same facts were introduced through other unobjected-to testimony. *See Burks*, 876 S.W.2d at 898.

*Sixth amendment right to confrontation*

Next, Fonseca argues that admission of Medina's testimony about Nuncio's oral statements violated his sixth amendment right of confrontation because the statements lacked indicia of reliability, were not originally made under oath, and were later repudiated under oath at trial. *See* U.S. Const. art. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). We review the trial court's ruling *de novo*. *Davis v. State*, 169 S.W.3d 660, 665 (Tex. App.—Austin 2005, no pet.); *see Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The Confrontation Clause applies to those who "bear testimony"—"[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (quoting *Webster's American Dictionary of the English Language* (1828)). When the declarant appears for cross-examination at trial, the Confrontation Clause does not place any constraints on the use of his prior testimonial statements. *Crawford*, 541 U.S. at 59 (confrontation clause does not bar admission of statement as long as declarant is present at trial to defend or explain it) (citing *California v. Green*, 399 U.S. 149, 162 (1970) (where declarant is not absent, but is present to testify and submit to cross-examination, cases support conclusion that admission of his out-of-court statements does not create confrontation problem)).

Even if Nuncio's statements were testimonial, the Confrontation Clause does not constrain the use of her prior statements because she appeared for cross-examination at trial. *See Crawford*, 541 U.S. at 59; *see also Carter v. State*, 150 S.W.3d 230, 241 n.13 (Tex. App.—Texarkana 2004, no pet.) (confrontation clause not violated because victim of felony assault on family member actually testified at trial). We overrule Fonseca's first issue.

**Ineffective assistance of counsel**

Next, Fonseca argues that his trial counsel's failure to object to Nuncio's written statement or request a limiting instruction regarding its use constituted ineffective assistance of counsel. The State responds that the statement was admissible and, alternatively, that counsel's failure to object did not constitute ineffective assistance of counsel because the statement was cumulative of other evidence, such as testimony about Nuncio's statements to the 911 operator, which was admitted without objection.

Under the *Strickland* standard, Fonseca must first demonstrate that his trial counsel's performance was deficient. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). Next, he must show that his counsel's deficient performance was so serious that it prejudiced his defense, rendering the trial unfair and the verdict suspect. *Id*. Appellate review of defense counsel's representation is highly deferential and presumes that counsel's conduct fell within the wide range of reasonable and professional assistance. *Scheanette*, 144 S.W.3d at 509 (citing *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). To overcome this presumption, the allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance of counsel. *Scheanette*, 144 S.W.3d at 509-10 (citing *McFarland v. State*, 845 S.W.2d 824, 844 (Tex. Crim. App. 1992)).

Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional. *Id*. (citing *Bone*, 77 S.W.3d at 833). Ineffective assistance claims are not built on retrospective speculation; rather, they must "be firmly founded in the record." *Id*. Fonseca is required to prove by a preponderance of the evidence that there is, in fact, no plausible professional reason for his counsel's omission. *Bone*, 77 S.W.3d at 836.

A motion for new trial was not filed in this case, and the record does not contain any evidence regarding the professional choices made by Fonseca's counsel. We are not permitted to

9

speculate about counsel's reasons for not objecting to Nuncio's written statement or not requesting a limiting instruction. *See Scheanette*, 144 S.W.3d at 510. We note, however, that Fonseca does not complain about similar evidence being admitted, without objection, via testimony from Martinez and Mendez about what the 911 operator reported to them. *See Burks*, 876 S.W.2d at 898.

Without any evidence to overcome the presumption, we must presume that counsel acted pursuant to a reasonable trial strategy. *Scheanette*, 144 S.W.3d at 510. We overrule Fonseca's second issue.

**Insufficient evidence**

Fonseca admits that the evidence is sufficient to support a finding that he assaulted Nuncio and caused her bodily injury by grabbing her and tearing her t-shirt, pulling her hair on two occasions, squeezing her jaw, and grabbing her arm. However, he contends in his third issue that the evidence is factually insufficient to show that he caused Nuncio bodily injury—physical pain—by striking her with his hand as charged in count two of the indictment. *See* Tex. Pen. Code Ann. § 1.07 (West 2003) (defining bodily injury as physical pain).

In a factual-sufficiency analysis, the evidence is viewed in a neutral light. *Drichas v. State*, No. PD-1015-04, 2005 Tex. Crim. App. LEXIS 1775, at *9 (Tex. Crim. App. October 19, 2005) (citing *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996)). There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). There are two ways in which the evidence may be insufficient: either the evidence supporting the finding, considered alone, is too weak to support the

10

jury's finding beyond a reasonable doubt or the contravening evidence may be so strong that the State could not have met its burden of proof. *Drichas*, 2005 Tex. Crim. App. LEXIS 1775, at *9 (citing *Zuniga*, 144 S.W.3d at 484-85).

A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code Ann. § 22.01 (West 2003). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id*. § 1.07. The definition is broad and encompasses "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).

Furthermore, a fact-finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it. *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.). When considering whether evidence is sufficient to establish that a victim suffered "bodily injury," juries are free to use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life, while giving effect to inferences that may reasonably be drawn from evidence. *See Wawrykow v. State*, 866 S.W.2d 96, 99 (Tex. App.—Beaumont 1993, pet. ref'd) (any rational fact-finder could have inferred that blows to head area "hurt" or caused "physical pain" beyond a reasonable doubt) (citing *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir. 1992)); *see also Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (construing meaning of "bodily injury"; people of common intelligence understand both physical pain and some natural causes of pain, and it is a reasonable inference men of common intelligence could certainly make that Macklin's bruises and muscle strain caused him "physical pain").

11

In this case, Medina testified that the 911 operator told him that Nuncio's "windshield has been broken and she has been slapped." He also testified that Nuncio told him that Fonseca "reached in [the car] and grabbed her by the hair and slapped her three or four times before she was able to close the door again." Moreover, Nuncio testified regarding the statement that she wrote the night of the assault:

Q: Do you recall saying, "He then slapped in the face [sic] about three times?"

A: I don't recall him doing that, but if that's what it says.

Q: Does it say, "He then slapped me in the face about three times"; does it say that?

A: Yes.

Q: And do you recall telling the sergeant this hurt at the time?

A: That is what it says.

Fonseca does not challenge the sufficiency of the evidence that he slapped Nuncio. He merely argues that there is no evidence that the slap(s) caused physical pain. However, Nuncio's testimony about her written statement to police on the night of the assault, in which she stated that the slap "hurt at the time," provides evidence from which the jury could find that Fonseca caused Nuncio physical pain and, thus, bodily injury.[5] *See* Tex. Pen. Code Ann. § 1.07. Furthermore, the jury was entitled to draw an inference that the slap caused Nuncio physical pain. *See Lane*, 763 S.W.2d at 786; *Randolph*, 152 S.W.3d at 774; *Wawrykow*, 866 S.W.2d at 99. The evidence supporting the

---

[5] There was no objection or request that the statement be limited to impeachment purposes. Therefore, it was admissible for all purposes. *See Richardson v. State*, 786 S.W.2d 335, 337 (Tex. Crim. App. 1990).

finding, considered alone, is not too weak to support the jury's finding beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484-85.

Moreover, although Nuncio testified that her written statement was not true, the jury was the trier of fact, and we give great deference to its fact determinations and its decisions about the credibility of witnesses. *See Hanks v. State*, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004). Factual disputes almost always turn on witness credibility. *Id*. We do not decide who or what the jury should have believed; we consider only whether a reasonable jury could have reached that verdict. *See Zuniga*, 144 S.W.3d at 484-85.

Considering Nuncio's testimony as a whole, the fact that she refused to acknowledge the veracity of her abuse allegations did not constitute contravening evidence that was so strong that the State could not have met its burden of proof. *See id*. We hold that the evidence was factually sufficient to support Fonseca's conviction. We overrule Fonseca's third issue.

## CONCLUSION

Having overruled Fonseca's issues, we affirm the order of the trial court.

_____
W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   December 15, 2005

Do Not Publish