**Tania L. WAWRYKOW, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 09–92–148 CR, 09–92–149 CR.**

Court of Appeals of Texas, Beaumont.

Nov. 24, 1993.

David Cunningham, Houston, for appellant.

Frank H. Bass, Jr., County Atty., Michael M. Valdez, Asst. County Atty., Conroe, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

The instant appeals come to us from a single trial involving appellant and her father, George M. Wawrykow, as defendants; each being charged with two separate offenses.[1] In the instant appeals, appellant was convicted by a jury for the misdemeanor offenses of Hindering Apprehension "A", and Assault "A". The jury assessed punishment at a fine of $3000 for the Hindering Apprehension offense with $1500 of said fine probated for a period of two (2) years. As for the Assault offense, the jury assessed appellant sixty (60) days in the Montgomery County Jail and, additionally, a fine of $3000. Appellant's jail time and $1500 of the fine were again probated for a period of two (2) years. Consolidating her appeals in a single brief, appellant raises the following three points of error:

> Point of Error One: There is insufficient evidence to sustain Tania Wawrykow's conviction for Class A Assault as the State

---

1. See our companion opinion in *Wawrykow v. State,* 866 S.W.2d 87 (Tex.App.—Beaumont, 1993, n.p.h.).

failed to prove bodily injury as required by section 22.01 of the Penal Code.

Point of Error Two: There is insufficient evidence to sustain Tania Wawrykow's conviction for Hindering Apprehension.

Point of Error Three: The prosecutor committed fundamental error by injecting his personal belief concerning the guilt of the appellants (sic) into the proceeding during final argument.

We will discuss appellant's first and second points of error together as they encompass the same general appellate standard for reviewing insufficient evidence complaints.

Although appellant's first two points of error complain generally of insufficient evidence, her brief reflects very specific and singular arguments regarding what pieces of evidence are lacking. The record reflects the separate informations charged appellant with Assault and Hindering Apprehension, respectively, by "intentionally, knowingly and recklessly caus[ing] bodily injury to another, namely, OFFICER L. FAUSTER, by striking OFFICER L. FAUSTER on or about the head with her fist," and "with intent to hinder the arrest of another, namely: GEORGE M. WAWRYKOW, did provide and aid in providing said GEORGE M. WAWRYKOW with means of avoiding arrest to-wit: by physically choking OFFICER FAUSTER with her arms."

With regard to the Assault charge, appellant argues that the State was required to prove "bodily injury" to Officer Fauster stemming from the alleged blows to Officer Fauster's head by appellant's fist. The argument continues that, at trial, the State failed to elicit any testimony that the alleged striking of Officer Fauster's head area by appellant caused Fauster "physical pain, illness, or any impairment of physical condition,"[2] or that Fauster was hurt in any way by said blow or blows to her head area. Following a careful examination of the statement of facts, we must agree with appellant that direct evidence of "pain" or "hurt" to Officer Fauster is lacking.

Appellant's argument under her second point of error is presented in her brief as follows:

Under Section 38.05(a)(2) of the Texas Penal Code, a person commits the offense of hindering apprehension by providing or aiding in the provision of any means of avoiding arrest or effecting escape. From a reading of the record, it is clear that when Tania Wawrykow went to the aid of her father, Dr. Wawrykow was not under arrest. Although he had been informed of the arrest, the officers had not yet effected the arrest.... It is clear that she believed that he (sic) father was being unduly assaulted and she came to his assistance to prevent further injuries. Upon seeing her father being struck, Ms. Wawrykow was acting under a form of duress which caused her to come to his assistance. As such and acting under the duress of seeing her father beaten, she cannot be held criminally liable for the offense of hindering apprehension.

■ As we appreciate her argument, appellant is saying that the evidence is lacking so as to prove that George Wawrykow was in fact under arrest when appellant "went to the aid of her father." Appellant's argument also appears to raise the defense of "necessity,"[3] as well as hint at an insanity defense.[4] As to both of these issues, the record reflects no attempt by appellant to raise them before the trial court either prior to trial or by a requested instruction to the jury. As such, these latter two issues are not preserved for appellate review. Tex.R.App.P. 52(a). Thus, the sole issue before us under appellant's second point of error is whether or not an arrest had been or was being effected on George Wawrykow at the time appellant intervened.

■ The law mandates that convictions be affirmed if the evidence, viewed in the light most favorable to the verdict, with all reasonable inferences and credibility choices made in support of it, is such that any ration-

---

2. *See,* Tex.Penal Code Ann. § 1.07(a)(7) (Vernon 1974).

3. *See,* Tex.Penal Code Ann. § 9.22 (Vernon 1974).

4. *See,* Tex.Penal Code Ann. § 8.01 (Vernon 1974 & Vernon Supp.1993).

al trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Indeed, juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *United States v. Heath,* 970 F.2d 1397, 1402 (5th Cir.1992), *cert. denied sub nom, Cheng v. U.S.,* — U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993). As factfinder, the jury is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991); Tex.Code Crim.Proc.Ann. art. 38.04 (Vernon 1979). Texas law further provides that a jury may believe a witness even though the witness's testimony has been contradicted; and that a jury may accept any part of a witness's testimony and reject the rest. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

Furthermore, lest we commit the same erroneous analysis as was pointed out to us in *Criner v. State,* 860 S.W.2d 84 (Tex.Crim. App.1993), by "disregard[ing] the circumstantial evidence in the record," and by "overlook[ing] the circumstantial evidence which could lead a rational trier of fact to believe beyond a reasonable doubt" that Officer Fauster was "hurt" or in "pain" as a result of appellant's alleged actions, or that George Wawrykow was under arrest when appellant acted as alleged, we will look to the totality of the circumstances surrounding the entire incident in order to determine if the jury could have satisfied itself that all of the essential elements had been proven beyond a reasonable doubt. *Id.,* op. at 86–87.

■ With regard to the Assault offense, several cases on the precise issue of proof of injury rely on the following language taken from *Ramirez v. State,* 518 S.W.2d 546 (Tex. Crim.App.1975):

> The terms "physical pain," "illness," and "impairment of physical condition" are terms of common usage, and when con-

strued "according to the fair import of their terms," in the context used in Section 1.07(a)(7), supra, are not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to their application." [citations omitted] A person of ordinary intelligence, who would be law-abiding, can determine with reasonable precision what conduct it is his duty to avoid.

*Id.* at 547–548. We note in passing that the sole issue for consideration in *Ramirez* was not the sufficiency of the evidence but whether the term "bodily injury" was so "vague, uncertain and indefinite" so as to be violative of both the U.S. and Texas Constitutions. *Id.* at 547. Nevertheless, subsequent cases addressing the issue of sufficiency of the State's proof of the "bodily injury" element have relied heavily on the above *Ramirez* language. One such case is *Goodin v. State,* 750 S.W.2d 857 (Tex.App.—Corpus Christi 1988, pet. ref'd). In *Goodin,* the complainant took the stand to recount his ordeal but did not testify specifically that he felt "pain" or that the bruises resulting from the encounter with the defendant "hurt." The Corpus Christi Court of Appeals quoted *Ramirez* in arriving at the conclusion that people of common intelligence do understand pain and some of the natural causes of pain, and that a jury made up of such people could find that the complainant did in fact suffer "pain" under a fair interpretation of that term as used in Section 1.07(a)(7). *Id.* at 859. Furthermore, it has been held that the Penal Code definition of "bodily injury" is purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. *Lane v. State,* 763 S.W.2d 785, 786 (Tex.Crim.App.1989).

. In the instant case, the record reflects the following direct examination testimony of the complainant, Officer Fauster:

Q. (the State) Okay. And after you entered the store what happened?

A. (Officer Fauster) We fell on the ground and we were trying to get Mr. Wawrykow's hands behind his back to handcuff him. And I know Tania was on my back. She was hitting myself and the

other officer in the back and the head with her fists. And it felt like somebody else was on our backs also, but I didn't see who that could have been.

Q. How can you be sure it was Tania?

A. Because I saw her.

Q. Okay. You said she was hitting you on the back. On the back of the head?

A. On the back. On the head. And screaming "Get off you fucking bitch."

Based upon the testimony of Officer Fauster as set out above and coupled with other eyewitness testimony contained in the record describing appellant as being violently abusive to the officers and virtually not in control of herself, we find that any rational factfinder could have inferred that the blows from appellant's fists to Officer Fauster's head area "hurt" the officer or caused her "physical pain" beyond a reasonable doubt. Point of error one is overruled.

■ Officer Fauster's direct examination testimony also aids us in resolving appellant's complaint under her second point of error, *viz:*

Q. (the State) Okay. Where were you standing?

A. (Officer Fauster) In front of the door of the Suburban speaking with Mr. Wawrykow who was still seated inside the truck.

Q. Okay. So at that time after he got out the truck and you said he pushed Officer Chilcutt, what happened?

A. Then it gets real complicated after that. He pushed Officer Chilcutt. And Officer Chilcutt ran to get in front of him because he started walking, you know, towards the door. And I reached out to grab his arm and that is when Tania jumped on my back, put her arms around, tried to put her arms around my neck the first time. So Chilcutt is still in front of him. And I turned around and pushed Tania back and told her "Don't put your hands on me." Then George Wawrykow pushed Chilcutt again right in the chest, pushed him back. And Chilcutt told him "You are under arrest."

Q. Okay. Approximately where did— Where (sic) were you when Tania grabbed you from behind?

A. We were going around the back of the truck. George Wawrykow went around the back of the truck to go to the store. And it was probably somewhere in the vicinity behind the truck or right by the curb of Kroger's.

———

Q. Okay. And what happened then?

A. After he pushed him the second time?

Q. Yes.

A. After he pushed him the second time Chilcutt said "You are under arrest." And he was still going towards the store. And Chilcutt went to get in front of him and told him he was under arrest again. And at that time George Wawrykow picked Chilcutt up by his arms like this and he slammed him into the wall.

———

Q. Okay. And what happened? What happened?

A. When he did that Tania Wawrykow had put her arms around my neck and she was, you know, trying to hang on to me and jerk me back. It was choking me. And when he slammed Chilcutt into the wall like that, Chili's head hit the wall. And at that time I drew my asp and I struck George Wawrykow once in the common peroneal nerve which is on the side of his right leg.

———

Q. Now you said that you pulled an asp and hit George Wawrykow. Was Tania still on you?

A. At that time yes, she was.

Q. Was she physically on top of you holding on to you?

A. She was hanging off my neck. It felt like she was choking me. I couldn't breathe for a little while.

Q. Okay. What did you do after that?

A. After I struck him I just stroke back with the asp. I wasn't hitting anybody. It is a move that they teach you. It is more to scare them and make them get away.

And I said, you know, "Get back." But I didn't hit anybody.

___

Q. Did Tania stay on you?
A. No, she didn't. She did back off then.
Q. Okay. What did you do then?
A. Well, the hitting him in his peroneal nerve had no effect on him at all. So I just threw the stick down and Chilcutt had grabbed him. And I just grabbed him from the back, too. And Tania jumped on my back again and we all just fell right into the lobby there.

It is certainly apparent from Officer Fauster's testimony that George Wawrykow was told more than once that he was under arrest and that appellant was in close proximity at the time. Indeed, the testimony indicates that appellant jumped on Officer Fauster's back three different times, applying the choke hold on the officer on one occasion, as Officer Fauster attempted to gain physical control of George Wawrykow in order to place handcuffs on him. Appellant clearly hindered Officer Fauster's attempts to effect the arrest. Again, based upon all of the direct and circumstantial evidence before the jury, taken in the light most favorable to their verdict, we find that any rational trier of fact could have found each essential element of the offense of Hindering Apprehension proven beyond a reasonable doubt. Point of error two is overruled.

■ Appellant's third point of error complains of the following portion of the State's final argument to the jury at the close of the guilt/innocence phase of the trial:

This is the law of the case. These are the charges. These are the Defendants. Now Mr. Leger says don't decide merely on the testimony of the officers. We are going to believe the officers. We are going to believe them because they are officers. They are wearing badges and all.

■ We note at the outset that appellant made no objection to this argument at trial. TEX.R.APP.P. 52(a) normally requires a party to timely and specifically object in order to preserve a complaint for appellate review. With regard to jury arguments, an exception to this contemporaneous objection require-

ment exists when the prosecutor's argument is so prejudicial that an instruction to disregard the argument could not cure the harm. *Harris v. State*, 827 S.W.2d 949, 963 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). In the instant case, we find the portion of the State's argument at issue is merely an attempt to restate the previous argument by appellant's trial counsel as it appears in the record, *viz:*

And I want to ask one other thing to you—of you. If you get back in the jury room and during your deliberations somebody says "We have got to believe these people because they are police officers. We have to support the police officers. We have got to believe them because they are police officers" or "They have a badge or uniform," I want the other of you jurors to turn to that juror and say "Why didn't you raise your hand? Why didn't you respond? Why didn't you speak up before?" Because it may be that we have wasted all of our time here and this case has to be tried again.

Taken in the context of appellant's final argument as set out above, the State's remarks fall within the four areas of permissible jury argument as a response to argument from opposing counsel. *Id.* Appellant's third point of error is overruled, and the judgments and sentences in both cases are affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I wholeheartedly join in the affirmance of the hindering apprehension charge and reluctantly concur in the affirmance of the assault charge. I have no real quarrel with our Chief Justice's reasoning and applaud my brother for cautiously and faithfully following the recent dictates of our reviewing court in *Criner v. State*, 860 S.W.2d 84 (Tex.Crim. App.1992). I would not be so cautious. As Judge Clinton pointed out in his dissenting opinion to denial of appellant's motion for rehearing on State's petition for discretionary review, at page 88, the court of criminal appeals is simply playing lip service to its

opinions in *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992) and *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App.1990). Either the courts of appeals are the final arbiters of fact questions or they are not; *Arcila* and *Meraz* say they are, *Criner* erodes that position. Either the "factual conclusivity clause" of our state constitution means something or it does not. Under the majority opinion in *Criner*, when the court of criminal appeals agrees with the court of appeals, the clause means what it says; when the court of criminal appeals disagrees with the lower court, the clause loses its meaning.

Since it is undisputed the state failed to produce any direct evidence that the physical contact caused bodily injury, i.e., produced any physical pain, illness, or any impairment of physical condition, the majority's analysis correctly focuses on whether there is any circumstantial evidence of bodily injury. While the officer did not testify she suffered any physical pain, she did testify about blows to the her head with appellant's fist. While there is certainly a difference between a reasonable inference and speculation,[1] the facts of this case support the reasonable inference that blows to the head with a closed fist will cause some amount of physical pain.[2] Therefore, I concur in the result.

BROOKSHIRE, Justice, concurring.

This concurring opinion is written separately to augment my concurring opinion in *George Wawrykow v. State*, 866 S.W.2d 87 (Tex.App.—Beaumont, 1993, n.p.h.) and filed this date, Nov. 24, 1993.

Again, the writer of the other concurring opinion states that he would not be "so cautious" in following the "recent dictates of our reviewing court in *Criner v. State*, 860 S.W.2d 84 (Tex.Crim.App.1992)". The Court of Criminal Appeals has been properly characterized as the caretaker of Texas law, being the court of last resort within the State court system in criminal matters. In *Criner*, the Court of Criminal Appeals was applying

Texas law as a law court confronting and correcting errors of law; the High Court was not passing upon or writing upon a fact question or an insufficiency of factual evidence question. It should be obvious that when a court of appeals is considering and analyzing an insufficiency of the factual evidence issue, that the courts of appeals must apply the correct rules of substantive law and must avoid errors of law.

In civil appeals, a parallel, harmonious, and functional doctrine is correctly and judiciously applied by the Supreme Court of Texas. *See and compare Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). Courts of appeals are simply not free to reanalyze or to reweigh the evidence and set aside a jury's verdict unless the intermediate appellate court acts correctly and constitutionally while exercising its fact jurisdiction. *See and compare Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985). *See also In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361 (1960); St. John Garwood, *The Question of Insufficient Evidence on Appeal*, 30 TEX. L.REV. 803 (1952). The landmark decision in *In re King's Estate* firmly established that the Texas Supreme Court might properly take jurisdiction, notwithstanding the finality of the judgments of the intermediate courts of appeals on fact questions, in order for the Texas Supreme Court to determine if a correct standard had been applied by the intermediate appellate courts.

Indeed, a number of later landmark cases such as *Puryear v. Porter*, 153 Tex. 82, 264 S.W.2d 689 (1954); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); and *Harmon v. Sohio Pipeline Co.*, 623 S.W.2d 314 (Tex.1981) are important ruling cases in a variety of different situations in which the Texas Supreme Court has properly reviewed courts of appeals decisions on factual insufficiency issues because the intermediate appellate courts had employed an incorrect test or standard. Thus, even in crucial, factual insufficiency matters, the Supreme Court has

---

1. See dissenting opinion in the companion case, *Wawrykow v. State*, 866 S.W.2d 87 (Tex.App.—Beaumont, 1993, n.p.h.).

2. As opposed to the speculation that a "push" to the chest will cause physical pain.

set out guidelines and *rules of law* to be followed by the courts of appeals in reviewing same and the civil High Court has delineated the legal role of the courts of appeals. Inescapably, then, in *Criner*, the Court of Criminal Appeals was exercising its prerogative *as caretaker of the proper principles of law to be used by the courts of appeals in passing upon crucial issues of factual insufficiency.*

Indeed, the task of the dual high courts has not been fully completed. In *In re King's Estate*, Chief Justice Calvert set out several appropriate procedures and correct analyses of the evidence and favored an explanation of why a certain finding was unjust. Justice Garwood opined that "[m]aybe some day we will develop more rules to aid trial courts and courts of civil appeals in dealing with this troublesome question."

Therefore, I readily concur with Chief Justice Walker's decision that sufficient evidence exists to sustain the jury's verdict. It is important to note that after listening to all of the evidence juries are free to employ their common sense and to use common knowledge, usual observation, and reliable experience obtained in the affairs of life when considering reasonable, logical, ineluctable inferences that may be reasonably drawn from the evidence and testimony. *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir.1992), *cert. denied sub nom, Cheng v. U.S.*, — U.S. —, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993). Thus, circumstantial evidence in a case is not to be disregarded.

Uniformity and balance, I submit, are desirable in the criminal justice system. The decision and holdings of the Court of Criminal Appeals in *Criner* are not only salutary and beneficial, they are necessary to have uniformity and equal justice, equally and fairly administered in the 254 counties of Texas as well as in the fourteen courts of appeals deciding criminal cases and writing on the law of crimes. Otherwise, different and varying standards, tests, and erroneous constructions of rules of law might well be applied in the fourteen sister courts.