# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00475-CR
NO. 03-11-00476-CR

**Patrick Marshall, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-10-0943 & CR-10-0959, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Patrick Marshall of the offenses of assault—family violence and aggravated assault with a deadly weapon—family violence. Punishment was assessed at 35 years' imprisonment for each offense, with the sentences to run concurrently. In six issues on appeal, Marshall asserts that the evidence is insufficient to support each conviction, that the application paragraph of the jury charge erroneously omitted an essential element of the assault offense, that the district court abused its discretion in allowing the State to impeach Marshall with evidence related to his prior convictions, that the district court abused its discretion in admitting the recorded statement of the victim's daughter, and that Marshall received ineffective assistance of counsel. We will affirm the judgment of conviction for the offense of aggravated assault with a deadly weapon but reverse the judgment of conviction for assault and remand for a new trial.

## BACKGROUND

The jury heard evidence that Marshall and his wife, Shawne, had a physical altercation during the night of September 5, 2010.  According to Shawne, during the altercation, Marshall threatened her with knives and put a pillow over her face while he was holding her down on their bed.  The altercation was witnessed by Shawne's adult son, Brian McGruder, and Shawne's five-year-old daughter, D.M.  McGruder testified at trial but D.M. did not.  However, a recording of D.M.'s statement to the police was admitted into evidence and played for the jury.  Additionally, the police officer who had interviewed D.M. following the altercation, Patsy Oaks, testified as to what D.M. had told her.  Also admitted into evidence was a recording of Shawne's statement to the police, along with the testimony of the officer who had interviewed her.  Marshall testified in his defense and denied the allegations against him.  We discuss the evidence in more detail below as it is relevant to Marshall's issues on appeal.

### Sufficiency of evidence supporting ordinary-assault conviction

In his first issue, Marshall asserts that the evidence is insufficient to prove that he committed the offense of assault—family violence ("ordinary assault").[1]  We disagree.

In reviewing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational jury could have found

---

[1] As distinguished from the aggravated-assault-with-a-deadly-weapon offense.

2

the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3] "The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record."[4] "The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt."[5] After that verdict has been reached, "[t]he reviewing court is not to assess the evidence as a 'thirteenth juror.'"[6] "Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt."[7] "A reviewing court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[8] "When the record supports conflicting

---

[2] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Smith v. State*, 363 S.W.3d 761, 773 (Tex. App.—Austin 2012, pet. ref'd).

[3] *Jackson*, 443 U.S. at 319; *see Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007).

[4] *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Smith*, 363 S.W.3d at 773.

[5] *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

[6] *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012) (quoting *Moreno*, 755 S.W.2d at 867).

[7] *Allen v. State*, 249 S.W.3d 680, 688 (Tex. App.—Austin 2008, no pet.) (Onion, J.).

[8] *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

3

inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination."[9]

When reviewing the sufficiency of the evidence, the essential elements of the offense are those of a hypothetically correct jury charge: "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[10] "This standard can uniformly be applied to all trials, whether to the bench or to the jury, *whether or not the indictment is facially complete, and regardless of the specific wording of the jury charge actually given*."[11] This standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted."[12]

A hypothetically correct jury charge for the offense of ordinary assault—family violence by suffocation would contain the following elements: (1) a defendant "intentionally, knowingly, or recklessly causes bodily injury to another"; (2) the victim is in a family relationship with the defendant; and (3) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.[13] Marshall asserts that the

---

[9] *Id*. (citing *Jackson*, 443 U.S. at 326).

[10] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[11] *Id*. (emphasis added).

[12] *Id*.

[13] *See* Tex. Penal Code § 22.01(a), (b)(2)(B).

evidence is insufficient to prove that he impeded Shawne's normal breathing as alleged, or that he caused her bodily injury by doing so.

Although the term "impeded" is not defined in the penal code, "the idea of impeding connotes interference or hindrance."[14] There is no requirement that the victim's breathing be completely stopped or that the victim be rendered unconscious.[15] Here, Shawne testified that she was unable to take deep breaths while Marshall held the pillow over her face, and she told the police that he had tried to "smother" her with the pillow. This evidence is sufficient for the jury to find beyond a reasonable doubt that Marshall had impeded Shawne's normal breathing.

The dissenting opinion agrees that the evidence is sufficient for the jury to find that Shawne's normal breathing was impeded but disagrees that it is sufficient for the jury to find that Shawne suffered bodily injury. Therefore, we will review this element and the evidence supporting it in more detail. "Bodily injury is broadly defined in the Penal Code as 'physical pain, illness, or any impairment of physical condition.'"[16] "This definition appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more

---

[14] *Carrasco v. State*, No. 07-11-00328-CR, 2012 Tex. App. LEXIS 2792, at *7 (Tex. App.—Amarillo Apr. 9, 2012, pet. ref'd) (mem. op., not designated for publication).

[15] *See id.*

[16] *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) (citing Tex. Penal Code § 1.07(a)(8)).

than mere offensive touching."[17]  "In fact, the degree of injury sustained by a victim and the 'type of violence' utilized by an accused appear to be of no moment."[18]

"Direct evidence that a victim suffered pain is sufficient to show bodily injury."[19] However, absent direct evidence, courts are also to consider "the circumstantial evidence in the record" that "could lead a rational trier of fact to believe beyond a reasonable doubt" that the defendant caused bodily injury to the victim.[20]  We must "look to the totality of the circumstances surrounding the entire incident in order to determine if the jury could have satisfied itself that all of the essential elements had been proven beyond a reasonable doubt."[21]  Additionally, testimony that a victim experienced pain is not required to prove bodily injury; "the jury is permitted to draw reasonable inferences from the evidence, including an inference that the victim suffered pain as a result of her injuries."[22]  "A fact finder may infer that a victim actually felt or suffered physical pain

---

[17] *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989); *Morales v. State*, 293 S.W.3d 901, 907 (Tex. App.—Texarkana 2009, pet. ref'd).

[18] *Lane*, 763 S.W.2d at 786.

[19] *Laster*, 275 S.W.3d at 524.

[20] *See Criner v. State*, 860 S.W.2d 84, 86-87 (Tex. Crim. App. 1992); *Wawrykow v. State*, 866 S.W.2d 96, 99 (Tex. App.—Beaumont 1993, pet. ref'd).

[21] *Wawrykow*, 866 S.W.2d at 99.

[22] *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (rejecting contention that, because no witness directly testified that victim suffered pain as result of being struck in mouth by husband's fist, evidence was insufficient to prove bodily injury); *see also Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (rejecting contention that, because victim never testified that he felt "pain" or that bruises and strains "hurt," State failed to prove bodily injury).

because people of common intelligence understand pain and some of the natural causes of it."[23] "Indeed, juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence."[24]

Moreover, causing physical pain is not the only way one can cause bodily injury; "the statutory definition of bodily injury also includes 'impairment of physical condition.'"[25] "Physical impairment," although not defined in the penal code, has been interpreted to include "the diminished function of a bodily organ."[26] Thus, even when a victim suffers no physical pain, if a rational jury could reasonably infer that the defendant caused the victim to suffer "any impairment of physical condition," the evidence is sufficient to prove bodily injury.[27]

In this case, Shawne provided extensive testimony regarding the details of the fight between her and Marshall. According to Shawne, during the fight, the following occurred:

> And then he came back, and—and he—he pushed me on the bed, and he said again, If I can't have you, nobody can. And then he went to get the pillow. And by that time, I could hear [D.M., Shawne's five-year-old daughter] coming around the corner. She was running around the corner. *And he put the pillow over my head, and I was fighting him the whole time. I was struggling. And he put the pillow over my head, and I could hear [D.M. saying], Daddy, stop. Daddy, stop.* And she was pulling at him. She was pulling at him. And he—and he went to get her off of him, and I was able to kick him off of me. . . .

---

[23] *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.).

[24] *Wawrykow*, 866 S.W.2d at 99.

[25] *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

[26] *Garcia*, 367 S.W.3d at 688.

[27] *See* Tex. Penal Code § 1.07(a)(8).

(Emphasis added).  Later during her testimony, Shawne added:

> I just remember either him grabbing me and pulling me to the bed, or I was already in the bedroom, and he pushed me down on the bed. I just remember ending up on the bed, but I didn't place myself there. *And he strangled me while we were on the bed, and he grabbed the pillow again and told me, If I can't have you, nobody can. And he put the pillow over my head, and I was struggling with him, fighting, trying to get up, trying to get him off me, but I couldn't.* And I kept—the pillow was right here (pointing), and I kept moving my face trying to get him off of me.  And then that's when I heard [D.M.] on my left side.

(Emphasis added).  Shawne also testified that she was "on her back" while the struggle was occurring.  To illustrate how Shawne had been positioned on the bed during the incident, the State had her draw a diagram for the jury.  Although the diagram is not included in the record, the following testimony was elicited while Shawne was drawing:

A.  My head was right here.  (Drawing).

I was laying this way, and he was over me.

(Drawing).

Q.  So he had one knee on each side of you like astraddle?

A.  Right.

Q.  Okay. Was his body weight on you?

A.  Yes.

Q.  Okay. All right. That's good.

Well, and then which side—where did you hear [D.M.]?

Could you see anything?

A.  Over here (pointing).

8

No.

Q. Why not?

A. I just heard her because the pillow was over my head.

Q. Okay. So you're blind—

A. Right.

Q. —can't see?

A. Right.

Q. Where did you hear [D.M.]?

A. On my left side.

Q. So you could hear her on your left?

A. Right.

Shawne also demonstrated for the jury how Marshall was holding the pillow over her face:[28]

Q. Can you show me with your hands how he was holding the pillow over your head?

Just use your first—just use your own—your own—

---

[28] A similar demonstration was shown to the jury in *Wawrykow v. State*, 866 S.W.2d 87 (Tex. App.—Beaumont 1993, pet. ref'd). In that case, the court acknowledged that there was no direct evidence presented that the victim, a police officer who had been pushed in the chest by the defendant, felt "pain" or was physically "hurt" by the defendant's conduct. *See id*. at 88. Nevertheless, the court held that there was sufficient evidence in the record to support the jury's finding that the officer sustained bodily injury. *See id*. at 90. The evidence included an in-court demonstration by the officer showing how hard he was pushed by the defendant. The court concluded, "We are of the opinion that case law requires us to view this unexplained demonstration before the jury as supporting the jury's verdict." *Id*. (citing *Rogers v. State*, 756 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *Gaona v. State*, 733 S.W.2d 611, 613-614, n. 1 (Tex. App.—Corpus Christi 1987, pet. ref'd)).

A.    This is the pillow—

Q.    Uh-huh.

A.    —and he had it on both sides (indicating).

Q.    Okay.  And so both sides of your head?

A.    Right.

Q.    So—

A.    Like, he had the pillow—each end of the pillow, holding it and pressing down.

Q.    So how did that feel on your face?  Did it—what did you feel?  Did you feel any pressure?

A.    It was hard.  I mean, it was tight. It was pressed against my face.

Q.    So the pillow was pressed tight against your face?

A.    Yes.

Q.    He was using pressure to keep it there?

A.    Yes.

Q.    Were his hands on either side of your face or on top of your face?

A.    Either side.

Q.    And was it on your face long enough for [D.M.] to come in and try to stop him from keeping it on there?

A.    Yes.

Q.    Were you able to take deep breaths?  Did it impede your normal ability to breathe when he had that pillow on your face?

A.    I wasn't able to take deep breaths.

Shawne acknowledged in both her statement to the police and in her testimony that she did not think the pillow was on her face long enough for her to be "unable" to breathe. She testified, "I just remember fighting and my face rubbing up against the pillow. I don't remember not being able to breathe. I don't—I just remember fighting, and I couldn't believe that the pillow was over my face." On cross examination, Shawne provided similar testimony: "I believe I could still breathe. It happened so fast that I don't remember not being able to breathe. I didn't pass out. I don't remember gasping for air when he finally got up. All I remember is my head going back and forth under that pillow." On the other hand, Shawne also provided testimony from which the jury could reasonably infer that, until Shawne's daughter distracted Marshall, Shawne was unable to get up from under Marshall while he was pressing the pillow against her face:

Q. And so was [D.M.] able to distract the defendant enough for him to ease up on the pressure of—of the pillow?

A. Yes.

Q. And did you realize that you had that opportunity at that point to get him—get up?

A. Yes.

Q. And how did you manage that?

A. I kicked him off of me.

Q. Okay. Now, if he's straddled over you, which part of your body was he straddled?

A. My lower body, I think my—my legs. Like, I think—I pushed, and he ended up back. So that's when I lifted up and kicked.

Q. Okay. So his balance was off, and he was up enough from your legs. But you —you were able to get your legs out and—

11

A.   Right.

Q.   —out and have a little bit of leverage?

A.   Right.

Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the verdict, we conclude that the evidence is sufficient to prove that Marshall caused Shawne either physical pain or impairment of her physical condition when he held the pillow over her head. The jury was able to see and hear Shawne during her testimony, view the diagram that she drew showing how she was positioned while Marshall was holding her down, and observe her demeanor, vocal inflections, and hand gestures as she demonstrated what Marshall was doing to her with the pillow. The jury was thus in a better position than this Court to infer whether Shawne suffered physical pain or physical impairment while the pillow was being pressed against her face.[29] And there is enough testimonial evidence in the record to conclude that the jury's inference of physical pain or impairment was reasonable. To summarize, Shawne testified that she was "struggling" and "fighting" with Marshall while the pillow was over her face; that Marshall had "strangled" her; that the pillow was "pressed" "hard" and "tight" against her face, with Marshall holding both sides of the pillow and using pressure to keep it there; that while Marshall was pressing the pillow against Shawne's face, he was using his body weight to hold her down on the bed; that the pillow was against Shawne's head long enough for her daughter to come into the bedroom and try to stop Marshall; that Shawne was unable to see her daughter while the pillow was over her face;

_____

[29] *See Morales*, 293 S.W.3d at 909-10 (deferring to jury's findings when evidence included "physical demonstrations or gestures given in the jury's presence, but that are not explicitly transcribed or detailed in the record").

12

that she was unable to kick Marshall off of her until he was distracted by her daughter, and that she was "unable to take deep breaths" while the pillow was over her face. The combined and cumulative force of the above evidence is sufficient for the jury, informed by common sense and knowledge of what causes physical pain and impairment, to reasonably infer that Marshall caused Shawne bodily injury, a concept that, again, is broadly defined. We overrule Marshall's first issue.

**Charge error**

In his second issue, Marshall claims that there was reversible error in the jury charge involving the ordinary-assault offense. Specifically, Marshall argues that, although the abstract portion of the charge included all of the essential elements of ordinary assault,[30] the application paragraph omitted the "bodily injury" element.[31] The State does not dispute that this omission was

---

[30] The abstract portion of the charge read in relevant part:

A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. Assault against one's family or household member is a felony if it is established that the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

[31] The application portion of the charge read in relevant part:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Patrick James Marshall, on or about the 5th day of September, 2010, in the county of Hays and State of Texas, as alleged in the indictment did then and there intentionally, knowingly, or recklessly impede the normal breathing or circulation of the blood of Shawne Marshall by blocking the nose or mouth of Shawne Marshall with a pillow, and the said Shawne Marshall was then and there a member of the defendant's family or household, you will find the defendant guilty of the offense of assault as alleged in the indictment. If you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

erroneous and we agree with Marshall that it was.[32] However, Marshall did not object to this omission in the court below. Accordingly, he is entitled to reversal only if the omission caused him egregious harm.[33]

Errors which result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory."[34] "To determine whether the record establishes that the appellant suffered egregious harm, a reviewing court must consider 1) the complete jury charge, 2) the arguments of counsel, 3) the entirety of the evidence, including the contested issues and weight of the probative evidence, and 4) any other relevant factors revealed by the record as a whole."[35] "In an egregious-harm analysis, the question is not simply whether, when viewed in the light most favorable to the verdict, the jury *could*

---

[32] *See Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995) ("In contrast to the indictment, which serves a notice function to the defendant, the function of the jury charge is to instruct the jury on the law applicable to the case. Because the charge is the instrument by which the jury convicts, the charge must contain an accurate statement of the law and must set out all the essential elements of the offense." (internal citations omitted)).

We also observe that the indictment contains the same omission of the element of bodily injury. However, because Marshall did not object to this deficiency below, any error in the indictment has been waived. *See Studer v. State*, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990); *see also* Tex. R. App. P. 33.1(a). And this is not the type of omission that renders the indictment fundamentally defective such that error preservation is not required. *See Duron v. State*, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997) ("[A] written instrument is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective.").

[33] *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd).

[34] *Almanza*, 686 S.W.2d at 172.

[35] *Hollander v. State*, 414 S.W.3d 746, 749-50 (Tex. Crim. App. 2013).

14

rationally have found predicate facts to a level of confidence beyond a reasonable doubt. Instead, a reviewing court must evaluate the likelihood, considering the record as a whole, that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence."[36]

When looking at the entirety of the jury charge, the abstract portion of the charge correctly defined ordinary assault as intentionally, knowingly, or recklessly causing bodily injury to another, and the charge went on to correctly define bodily injury as "physical pain, illness or any impairment of physical condition." However, no further reference to bodily injury appeared in the charge involving the ordinary-assault offense, including in the application paragraph that authorized the conviction.[37] There was a reference to bodily injury in the application paragraph relating to the aggravated-assault offense, which instructed the jury to determine whether Marshall, using the knife, had intentionally and knowingly threatened Shawne "with imminent bodily injury." But this reference makes the omission of "bodily injury" in the application paragraph for ordinary assault even more problematic, as it could have caused the jury to believe that the term "bodily injury," as defined in the abstract portion of the charge, applied to the aggravated-assault offense but not to the ordinary-assault offense.

Moreover, the prosecutor emphasized only the application paragraphs in her closing argument:

---

[36] *Id*. at 751 (emphasis added).

[37] *See Jones v. State*, 815 S.W.2d 667, 669 (Tex. Crim. App. 1991) ("[T]he application paragraph of a jury charge is that which authorizes conviction."); *Morales v. State*, 659 S.W.2d 867, 869 (Tex. App.—El Paso 1983, no pet.) ("The critical functional distinction between the abstract portion of the charge and the application paragraph is that the former provides general guidance to the jury while the latter forces the jury to pass upon the precise requirements of the applicable penal statute before returning a verdict of guilty.").

15

Now, the Court's instructions give you what we call application paragraphs, and that's what you look at to decide did the State prove what they're saying that he did. And when you look at the two separate incidents, just ask yourself, Do I believe that he threatened her with the knives? Do I believe that he put a pillow over her face and impeded her normal breathing? If as you sit here, after hearing all of the testimony and looking through the evidence and hearing from everybody—if you sit here and you think, "Yeah, I think that that happened," then you find him guilty. That's what the Court's instructions tell you to do.

At no point during its argument did the State refer the jury to the abstract portion of the charge where ordinary assault was defined to include the element of bodily injury; argue that the State had to prove that Shawne suffered bodily injury; or even draw the jury's attention to the evidence in the record, summarized above, tending to show that Shawne had suffered bodily injury.

Also, during voir dire, another prosecutor explained to the jury the elements of the offense, without mentioning bodily injury:

Okay. Real quickly, what we have to prove to you—these are the elements we have to prove beyond a reasonable doubt for you to find this defendant guilty. And what it is is we only have to prove these elements of the crime, nothing more, nothing less.

And so, basically, we have to say on or about a date, that the crime happened in Hays County, that it was this defendant, and that he intentionally or he knowingly or he even just recklessly impeded the normal breathing or impeded the circulation of the blood or breath of the victim by blocking her nose or mouth.

So, basically, it's what we kind of think of as suffocation. Did he—was he—did he have the intent—was he doing something where he recklessly, knowingly or intentionally blocked her nose and mouth, and that impeded her normal breathing, and that it was a member of his family.

So those are the elements.

Defense counsel did not object to the prosecutor's characterization of what the State was required to prove. Additionally, when the prosecutor recited the indictment for ordinary assault in open court

16

at the beginning of trial, the recitation omitted the element of bodily injury, because, as we noted above, that element was not included within the indictment.[38] Thus, on multiple occasions, the jury was not informed regarding the full extent of the facts the State was required to prove.

Finally, when looking at the state of the evidence, this is not a case in which the evidence of bodily injury was overwhelming or uncontroverted. The only evidence supporting a finding of bodily injury from the pillow was Shawne's trial testimony. And during cross-examination, defense counsel challenged Shawne's recollection of the pillow incident and pointed to discrepancies between her trial testimony and her statement to the police, in which she had minimized the seriousness of the incident and the amount of time during which the pillow was over her face. Shawne's statement to the police, in which she can be heard telling an officer that the pillow was not on her head long enough for her to "los[e] her breath," was played for the jury. Also, Marshall, in his own testimony, denied Shawne's account of what had transpired with the pillow.

Based on the above, we cannot conclude with the requisite level of confidence that the jury would have found bodily injury if that element had been properly included in the application paragraph of the charge. On the facts of this case, its omission from the charge effectively relieved the State of its burden to prove beyond a reasonable doubt an essential element of the ordinary-assault offense. Accordingly, on this record, we conclude that Marshall suffered egregious harm from the charge error.[39] We sustain Marshall's second issue.[40]

---

[38] *See supra* note 32.

[39] *See Hollander*, 414 S.W.3d at 751-52; *Jones*, 815 S.W.2d at 670.

[40] Although we are reversing the assault conviction because of charge error, it was necessary to also address the sufficiency of the evidence in order to determine the appropriate remedy to which

**Sufficiency of evidence supporting aggravated-assault conviction**

In his third issue, Marshall asserts that the evidence is insufficient to prove that he committed the offense of aggravated assault with a deadly weapon. Specifically, he contends that the evidence is insufficient to prove that the knives used in the aggravated assault were deadly weapons. We disagree.

As charged, a deadly weapon is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.[41] In determining whether a knife is a deadly weapon, factors to consider include "the size, shape, and sharpness of the knife; the manner of its use or intended use; the nature or existence of inflicted wounds; evidence of the knife's life-threatening capabilities; the physical proximity between the victim and the knife; and any words spoken by the one using the knife."[42] Here, Shawne testified that one of the knives used was a "meat slicer" that was long, thin, and used for "cutting meat," while the other knife was characterized as a "larger butcher knife." Shawne further testified that her finger was cut by one of the knives while she was struggling with Marshall. Viewing this and other evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to prove that the knives used during the assault were deadly weapons. We overrule Marshall's third issue.

---

Marshall is entitled. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (holding that it is error for reviewing court to remand case for new trial without also addressing sufficiency challenge); *Rains v. State*, 604 S.W.2d 118, 120 (Tex. Crim. App. 1980) ("Although the judgment must be reversed we still must address the appellant's contention that the evidence was insufficient, for this ground would entitle the appellant to a judgment of acquittal rather than a new trial.").

[41] *See* Tex. Penal Code § 1.07(a)(17)(B).

[42] *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd).

**Admissibility of evidence concerning Marshall's prior convictions**

In his fourth issue, Marshall asserts that the district court abused its discretion in allowing the State to impeach his testimony with evidence of his prior felony convictions. Although he does not challenge the admissibility of the convictions themselves, Marshall claims that the details of these offenses were inadmissible.

During his testimony, Marshall denied that he had assaulted Shawne in the manner alleged. He testified, "There was never no knife. There was never no pillow being put over her face, none of that. That is assassination of my character. I don't appreciate that." Marshall also denied "wrestling" with Shawne on the bed and shoving her against the wall. He further denied that he had committed other assaults against Shawne, including incidents in which, according to Shawne, Marshall had choked her, bitten her, and threatened her with a machete. At the end of his direct examination, Marshall acknowledged that he had twice been convicted of the felony offense of aggravated robbery with a deadly weapon, in 1989 and 1995.[43] When asked by counsel if he had "changed" since those convictions, Marshall answered, "Yes, sir."

On cross-examination, the State, referring to one of the prior convictions, asked Marshall, "Isn't it true that you shot a man with a sawed-off rifle for his wallet and watch?" Counsel objected on the ground that "getting into the details of the prior convictions is not appropriate impeachment under Rule 609." The State responded that Marshall had "opened the door by getting into the convictions" and by testifying "that he never used knives, he never used the pillow, giving

---

[43] Although Marshall testified that he was convicted in 1992, the judgment of conviction indicates that he was convicted in 1995. The offense was apparently committed in 1992.

this jury a false impression that he's not a violent person." The district court overruled the objection, and the State proceeded to ask Marshall several questions related to the prior convictions.[44]

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.[45] The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles.[46] A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."[47] Moreover, we must sustain a trial court's ruling admitting or excluding evidence on any theory of law applicable to the case.[48]

"It is well settled that 'an accused puts his character for veracity (as opposed to his moral character) in issue by merely taking the stand, and thus he may be impeached in the same

---

[44] Later during this line of questioning, counsel also objected on the bases of Rules of Evidence 403 and 404(b), which Marshall asserts on appeal should also serve as grounds for reversal. However, by the time counsel had lodged those objections, Marshall had already answered several questions related to the convictions. Accordingly, Marshall failed to preserve error on those grounds. *See* Tex. R. App. P. 33.1(a)(1); *Martinez v. State*, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002); *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991). And, even if he had preserved error, we would not be able to conclude on this record that the district court abused its discretion in finding that the details of the convictions were admissible to rebut the defensive theory that Marshall would not use a weapon on Shawne, and in finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403, 404(b); *De La Paz v. State*, 279 S.W.3d 336, 346-47 (Tex. Crim. App. 2009); *Wheeler v. State*, 67 S.W.3d 879, 887 & n.18 (Tex. Crim. App. 2002).

[45] *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008).

[46] *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

[47] *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

[48] *See Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

manner as any other witness.'"[49] As with any other witness, the fact that a testifying defendant has been previously convicted of a felony or a crime involving moral turpitude is generally admissible as impeachment evidence.[50] However, the details of the conviction are generally inadmissible for the purpose of impeachment.[51] There is an exception to this prohibition. "Where a witness 'creates a false impression of law abiding behavior, he 'opens the door' on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood.'"[52] "The inference that is permissible from such exposure is that if the accused lied or was in error as to a collateral matter (especially one implicating his aptitude for getting in trouble with the law), he is likely to have lied or been in error in the balance of his testimony—those aspects of his testimony that are relevant to material issues in the case."[53] "This is a proper impeachment function."[54]

Here, we cannot conclude that the district court abused its discretion in finding that Marshall had opened the door to details of his prior convictions when he testified that it was "character assassination" to suggest that he had used a knife on Shawne and placed a pillow over her head. Based on this and other testimony, it would not have been outside the zone of reasonable

---

[49] *Prescott v. State*, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988) (quoting *Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986)).

[50] *See* Tex. R. Evid. 609.

[51] *See Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986); *Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Arebalo v. State*, 143 S.W.3d 402, 407 (Tex. App.—Austin 2004, pet. ref'd).

[52] *Arebalo*, 143 S.W.3d at 407 (quoting *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993)).

[53] *Hammett*, 713 S.W.2d at 105-06.

[54] *Id*. at 106.

disagreement for the district court to find that Marshall was attempting to establish himself as a law-abiding citizen who does not use weapons on people, and to allow the State, in order to rebut that impression, to question Marshall regarding the details of his prior convictions for aggravated robbery, including the fact that the offenses had involved weapons. We overrule Marshall's fourth issue.

**Admissibility of D.M.'s recorded statement**

During his cross-examination of Patsy Oaks, the officer who had interviewed D.M., counsel told Oaks that he had "listened to your interview of [D.M.]" and then repeated a specific statement that counsel claimed he had heard D.M. make during the interview, that "Daddy tried to kill Mommy." Counsel proceeded to ask Oaks, "But you never asked how. How do you know that?" Oaks replied, "She told me." Counsel continued to ask Oaks questions related to the statement D.M. had made and claimed in his questioning that Oaks was making assumptions concerning what D.M. had meant by the statement and that Oaks did not really know what D.M. was telling her. At one point, Oaks answered, "It's on video," without specifying what was "on video." After counsel had finished asking questions related to the interview, the State sought to introduce the video recording into evidence, under the rule of optional completeness.[55] Over counsel's objection, the district court allowed the recording to be played for the jury. In his fifth issue, Marshall asserts that this was an abuse of discretion. We disagree.

---

[55] *See* Tex. R. Evid. 107 ("When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.").

22

The rule of optional completeness "is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party."[56] "It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing."[57] "Thus, Rule 107 is not invoked by the mere reference to a document, statement, or act."[58] "The plain language of Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'"[59] When a party refers to specific statements made during the interview which, if taken out of context, could create the possibility of the jury receiving a false impression of the statements, the opposing party is "entitled to offer any other evidence that was necessary to make the conversation fully understood."[60]

Here, defense counsel referred to a specific statement made by D.M. that he claimed he had heard when he had "listened to the interview," and, through his cross-examination of Oaks, tried to cast that statement in a light that was less damaging to Marshall's case. It would not have been outside the zone of reasonable disagreement for the district court to conclude that, in order to

---

[56] *Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007).

[57] *Id*.

[58] *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011).

[59] *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (quoting Tex. R. Evid. 107).

[60] *See Credille v. State*, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *see also Tovar v. State*, 221 S.W.3d 185, 190-91 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

avoid giving the jury a false impression of what counsel claimed he had heard during the interview and to ensure that the jury had a complete understanding of the context in which D.M.'s statements were made, the jury needed to hear the entirety of the interview for itself.[61]  Accordingly, we cannot conclude that the district court abused its discretion in admitting the evidence.  Furthermore, even if the recording should not have been admitted, we could not conclude on this record that Marshall's substantial rights were affected by its admission.[62]  The recording added few, if any, material details to Oaks's testimony about what D.M. had said.  Given the other evidence in the case tending to show that Marshall had assaulted Shawne with a knife, we cannot conclude that any error in admitting the

---

[61]  *See Mick v. State*, 256 S.W.3d 828, 831-32 (Tex. App.—Texarkana 2008, no pet.); *Tovar*, 221 S.W.3d at 190-91; *Credille*, 925 S.W.2d at 116-17.

Marshall contends that this case is controlled by *Sauceda v. State*, a case in which the court of criminal appeals held that the district court had abused its discretion by admitting into evidence the entirety of a recorded interview.  *See* 129 S.W.3d at 123-24.  In that case, however, defense counsel did not refer to specific statements made during the interview and there was no risk of confusing the jury regarding what had been said.  *See id*.  Here, in contrast, counsel represented that he had listened to the interview, repeated a specific statement that he claimed he had heard, and disputed Oaks's account of the interview.  Thus, it would not be outside the zone of reasonable disagreement for the district court to conclude that there was a risk that the jury had been given a false impression of what was said during the interview and to admit the recording in its entirety in order to prevent juror confusion on that matter.

[62]  *See* Tex. R. App. P. 44.2(b) (providing that non-constitutional errors that do not affect substantial rights must be disregarded); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."); *see also Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) ("In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence.").

evidence had a substantial and injurious effect or influence in determining the jury's verdict.[63]  We overrule Marshall's fifth issue.

**Ineffective assistance**

Finally, we address Marshall's sixth issue, in which he asserts that he received ineffective assistance of counsel.  Marshall complains primarily of counsel's decision not to object to the admission of extraneous-offense evidence tending to show that Marshall had committed other assaults against Shawne earlier in their relationship.[64]  During Shawne's direct examination, the State elicited testimony that, on prior occasions, Marshall had bitten her chest and cheek, choked her, and threatened her with a machete.  During this line of questioning, after several questions had been asked and answered, defense counsel objected to "getting into extraneous offenses here," but the district court overruled the objection, noting that it was "[k]ind of late for that."

---

[63]  We refer only to the jury's verdict for the aggravated-assault conviction.  Because we are reversing Marshall's ordinary-assault conviction for charge error, we express no opinion on whether the recording, if admitted in error, had a substantial and injurious effect or influence on the jury's verdict for that offense.

[64]  Marshall also asserts that counsel was ineffective in failing to object to the erroneous jury charge discussed above.  Because we are already reversing the ordinary-assault conviction and remanding for a new trial based on that charge error, we need not address whether counsel was ineffective in failing to object to it.  *See* Tex. R. App. P. 47.1; *Nash v. State*, 115 S.W.3d 136, 141 (Tex. App.—Texarkana 2003, no pet.); *see also Vanhook v. State*, No. 09-12-00066-CR, 2013 Tex. App. LEXIS 12830, at *5-6 (Tex. App.—Beaumont Oct. 16, 2013) (mem. op., not designated for publication).  Marshall further asserts various "other instances" of deficient performance by trial counsel, but he concedes in his brief that "a more developed record would be required to either demonstrate ineffectiveness or harm resulting from" these other complaints.  Having reviewed the record, we agree with Marshall that it is not possible on direct appeal to determine the merits of these additional complaints, and we will therefore not discuss them here.  *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("[C]laims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus.").

The standard of review for claims of ineffective assistance of counsel is well known to the parties.[65] Marshall must demonstrate, by a preponderance of the evidence, not only that counsel's performance was deficient but also that there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different.[66] On this record, Marshall has failed to establish that counsel's performance was deficient.

First, there could have been a strategic reason for counsel to initially refrain from objecting to the evidence of extraneous offenses. The record reflects that counsel later attempted to use the extraneous offenses to discredit Shawne's testimony, noting that she did not report these earlier incidents to the police or tell other people about what she claimed had happened. Counsel could have reasonably decided that some of the extraneous-offense evidence could be used to cast doubt on Shawne's credibility and to not object to the admission of that evidence, but to later object to the evidence that he had concluded would hurt more than help his client. Thus, the decision not to initially object to the evidence could have been strategically motivated, and without a record demonstrating otherwise, we cannot find that counsel's decision constitutes deficient performance.[67]

Additionally, to show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the

---

[65] *See Strickland v. Washington*, 466 U.S. 668, 690-91, 693-96 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010); *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986); *Kuhn v. State*, 393 S.W.3d 519, 537 (Tex. App.—Austin 2013, pet. ref'd).

[66] *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[67] *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Stafford v. State*, 813 S.W.2d 503, 508 (Tex. Crim. App. 1991); *Kuhn*, 393 S.W.3d at 538.

objection.[68] Thus, if the evidence complained of is admissible, then the appellant cannot show that his counsel was ineffective in failing to object to it.[69] Here, the extraneous-offense evidence would have been admissible to prove either Marshall's intent to assault Shawne or to rebut the defensive theory maintained throughout trial that Shawne had fabricated the severity of the altercation, and the district court would not have abused its discretion in admitting the evidence on those grounds.[70] On this record, we cannot conclude that counsel was ineffective for declining to object to evidence that could have been strategically important to his client's case and that would have been admissible even if counsel had objected. We overrule Marshall's sixth issue.

## CONCLUSION

We affirm the judgment of conviction for the offense of aggravated assault with a deadly weapon, trial court cause number CR-10-0943 (appellate cause number 03-11-00475-CR). However, having found that Marshall was egregiously harmed by the omission of an essential element of the assault offense in the application paragraph of the jury charge, we reverse the

---

[68] *See Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012); *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Cadoree v. State*, 331 S.W.3d 514, 529 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

[69] *Hollis v. State*, 219 S.W.3d 446, 463 (Tex. App.—Austin 2007, no pet.) (citing *Lee v. State*, 29 S.W.3d 570, 577-78 (Tex. App.—Dallas 2000, no pet.); *Cooper v. State*, 707 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd)).

[70] *See* Tex. R. Evid. 404(b); *De La Paz v. State*, 279 S.W.3d 336, 346-47 (Tex. Crim. App. 2009); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Wheeler*, 67 S.W.3d at 887-88; *Blackwell v. State*, 193 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

trial court's judgment of conviction in trial court cause number CR-10-0959 (appellate cause number

03-11-00476-CR) and remand that cause to the district court for a new trial.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose;
    Concurring and Dissenting Opinion by Justice Puryear

03-11-00475-CR        Affirmed

03-11-00476-CR        Reversed and Remanded

Filed:   April 3, 2014

Do Not Publish