

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00255-CR

_____

LATRICIA TYLER, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 2
Tarrant County, Texas
Trial Court No. 1460191

Before Meier, Pittman, and Birdwell, JJ.
Opinion by Justice Meier

## OPINION

## I. Introduction

On June 13, 2016, after Appellant Latricia Tyler's spouse called 911 to report a domestic disturbance involving complainant Pauletta Petitt, Fort Worth Police Officer Douglas Bengal and another officer were dispatched at around 3:07 p.m. They arrived separately at the scene at around 3:21 p.m. and spoke with Petitt, Petitt's spouse, and Tyler's spouse and son. Tyler had already left the scene. Upon concluding his domestic disturbance investigation, Officer Bengal moved his vehicle into a vacant school parking lot around 450 feet away to put his notes into the vehicle's computer. While inputting his notes, he saw a Buick, which he had been told Tyler drove, arrive, and a woman he identified at trial as Tyler run toward Petitt and body slam her. Officer Bengal testified that he saw the encounter through the chain-link fence that surrounded the school parking lot.

A jury convicted Tyler of misdemeanor assault causing bodily injury. After assessing a 180-day sentence and fine, the trial court suspended Tyler's sentence, reduced the fine, and placed her on 24 months' probation. *See* Tex. Penal Code Ann. § 12.21 (West 2011) (stating that an individual adjudged guilty of a Class A misdemeanor shall be punished by a fine not to exceed $4,000, confinement in jail for a term not to exceed one year, or both), § 22.01(a)(1), (b) (West Supp. 2018) (setting out elements and reciting that assault is a Class A misdemeanor unless certain

2

circumstances, not relevant here, apply). The trial court also assessed $260 in court costs.

In three points, Tyler complains that the evidence is insufficient to support her conviction, that the trial court abused its discretion when it admitted inadmissible evidence, and that code of criminal procedure article 102.008(a) is unconstitutional with regard to $25 assessed as part of her court costs for a district attorney's fee. We will affirm.

## II. Sufficiency of the Evidence

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our

3

judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33. We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a sufficiency review. *Jenkins*, 493 S.W.3d at 599; *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). We must do so even in a case that we reverse and remand because of error in the admission of evidence. *Moff*, 131 S.W.3d at 490.

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins*, 493 S.W.3d at 599; *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *See Jenkins*, 493 S.W.3d at 599. The law as authorized by the charging instrument means the statutory elements of the charged offense as modified

4

by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements."). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

## A. Applicable Law

Tyler's charging instrument alleged that on or about June 13, 2016, she had intentionally or knowingly caused bodily injury to Petitt by pushing her with her hand. *See* Tex. Penal Code Ann. § 22.01(a)(1) (stating that a person commits assault if she intentionally, knowingly, or recklessly causes bodily injury to another). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8) (West Supp. 2018).

## B. Evidence

Officer Bengal, the patrol officer who responded to the June 13, 2016 domestic disturbance call, testified that he saw Tyler running toward Petitt, Tyler's next-door neighbor, "and bodily slamming her, knocking her about" before a fight ensued. He identified Tyler at trial as the person he had arrested for the assault that day and said that it had appeared to him that Petitt had been in pain. Over Tyler's objection, Officer Bengal explained that he had concluded Petitt was in pain because it would be

reasonable that "if somebody had r[u]n up to [him] and slammed into [him] causing [him] to shake and recoil, that pain would be inflicted, which is what [he] witnessed."

The trial court admitted Officer Bengal's bodycam recording into evidence and allowed it to be published to the jury. The bodycam footage showed the events immediately after the officers returned to the scene.[1] It showed Tyler vigorously, angrily, loudly, and profanely contradicting Officer Bengal's assertion of what he had seen and, briefly, the distance from which he had seen the attack through the chain-link fence.

## C. Analysis

Tyler complains that the evidence is insufficient to show that Petitt suffered bodily injury and refers us to *Pierson v. State*, No. 14-06-00044-CR, 2007 WL 412357 (Tex. App.—Houston [14th Dist.] Feb. 8, 2007, no pet.) (mem. op., not designated for publication), and *Wawrykow v. State*, 866 S.W.2d 96 (Tex. App.—Beaumont 1993, no pet.), as examples of what sort of evidence would have been sufficient.

In *Pierson*, an unpublished opinion issued prior to *Brooks*, in which the court of criminal appeals held that there was no meaningful distinction between the legal and factual sufficiency standards as they related to the State's burden to prove the elements of an offense beyond a reasonable doubt, *see Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010), the complainant's testimony was limited in scope

---

[1]Tyler objected to the bodycam footage "on the grounds of relevance and hearsay," and the trial court overruled the objections.

based on her representations that certain lines of questioning would require her to give conflicting statements under oath, and the arresting officer described what he had seen firsthand when he arrived at the scene. *Pierson*, 2007 WL 412357, at \*2–3. The reviewing court held that the evidence was sufficient when the arresting officer gave detailed testimony about the complainant's appearance and injuries, including his hearsay testimony that the complainant had told him that the appellant's act of choking her had caused her pain. *Id.* at \*3–4.

In *Wawrykow*, another pre-*Brooks* case, the court acknowledged that there was no direct evidence at trial of "pain" or "hurt" to the complainant. 866 S.W.2d at 98. But the court pointed out that under the *Jackson* sufficiency standard, "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Id.* at 99. The court also noted that the penal code's definition of "bodily injury" is "purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Id.* The complainant in that case testified that the appellant had been on her back, hitting her in the back and the head. *Id.* at 99–100. The court concluded that from this testimony, "coupled with other eyewitness testimony . . . describing appellant as being violently abusive . . . and virtually not in control of herself," any rational factfinder could have inferred that the blows from the

appellant's fists "hurt" or caused "physical pain" beyond a reasonable doubt. *Id.* at 100.

As set out above, our standard of review requires us to review all of the evidence in the light most favorable to the verdict, with the factfinder judging the weight and credibility of the evidence and drawing reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* Tex. Crim. Proc. Ann. art. 38.04; *Blea*, 483 S.W.3d at 33. The jury was entitled to believe Officer Bengal's testimony about seeing Tyler's physical contact with Petitt and to infer the result of that contact—pain—particularly in light of Tyler's emphatic reaction, captured on the bodycam footage, during her arrest. The jury was likewise entitled to disbelieve Tyler's disclaimers on the arrest footage. Accordingly, we hold that the evidence is sufficient to support the jury's finding on the "bodily injury" element, and its findings on the rest of the elements of the assault offense, and we overrule Tyler's second point. *See Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (stating that "bodily injury" may include "even relatively minor physical contacts so long as they constitute more than mere offensive touching"); *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd) ("A jury may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it."); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (same).

### III. Admissibility of Evidence

In her first point, Tyler complains that the trial court abused its discretion by admitting Officer Bengal's "speculative and therefore inadmissible" testimony about whether Tyler caused bodily injury and pain to the complainant.

We review a trial court's decision to admit evidence for an abuse of discretion and will not reverse that decision absent a clear abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

The following is the portion of testimony at issue:

> Q. [District Attorney]: Did it appear that Ms. Petitt was in pain to you?
>
> A. Yes.
>
> Q. Why did you come to that decision?
>
> [Defense Counsel]: Objection. Calls for speculation.
>
> THE COURT: Overruled.
>
> Q. [District Attorney]: Why did you come to that decision?
>
> A. It would be reasonable if somebody had ran up to me and slammed into me causing me to shake and recoil, that pain would be inflicted, which is what I witnessed.

The court of criminal appeals has defined for us the difference between inference and speculation. *Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007). An inference is a conclusion reached by considering other factors and

9

deducing a logical consequence from them. *Id.* at 16. Speculation, on the other hand, is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id.* Under the *Jackson* standard of review set out above, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial, but juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* at 15–16. The court further explained,

> Without concrete examples, it can be difficult to differentiate between inferences and speculation, and between drawing multiple reasonable inferences versus drawing a series of factually unsupported speculations. This hypothetical might help clarify the difference. A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference

10

because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor. This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.* at 16.

Officer Bengal had previously testified that he watched Tyler run toward Petitt, bodily slam into her, and knock her about before a fight ensued. Accordingly, his subsequent testimony—the portion at issue—while phrased as a hypothetical applied to himself—"It would be reasonable if somebody had r[u]n up to [him] causing [him] to shake and recoil"—was an elaboration of what he had earlier testified happened when Tyler ran up to Petitt, i.e., that Tyler slammed her body into Petitt's. From his first-person observations, he was able to infer that Petitt had suffered pain from Tyler's actions. *See id.* Considering all of Officer Bengal's testimony, we conclude that the trial court did not abuse its discretion when it overruled Tyler's objection to speculation, and we overrule Tyler's first point.

## IV. Code of Criminal Procedural Article 102.008

In her third point, Tyler argues that the $25 district attorney fee assessed as part of her court costs under code of criminal procedure article 102.008(a) was an unconstitutional tax because it is not expended on a legitimate criminal justice purpose. She asks us to modify the judgment by deleting that fee from her court costs.

11

Article 102.008(a) of the code of criminal procedure provides,

> Except as provided by Subsection (b), a defendant convicted of a misdemeanor or a gambling offense shall pay a fee of $25 for the trying of the case by the district or county attorney. If the court appoints an attorney to represent the state in the absence of the district or county attorney, the appointed attorney is entitled to the fee otherwise due.

Tex. Code Crim. Proc. Ann. art. 102.008(a) (West 2018). Subsection (b) merely states that no fee for trying the case may be charged against a defendant prosecuted in a justice court for violating a penal statute or the Uniform Act Regulating Traffic on Highways. *Id.* art. 102.008(b). Subsection (d) states that a defendant is liable for the fees imposed by subsection (a) if he or she is convicted and either does not appeal or the court of appeals affirms the conviction. *Id.* art. 102.008(d).

The First Court of Appeals has held that article 102.008(a) is unconstitutional. *See Hernandez v. State*, No. 01-16-00755-CR, 2017 WL 3429414, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet.). The court reached this conclusion because the statute, standing alone, does not state where the $25 fee is to be directed and because the Office of Court Administration's website reflects that 100% of the money collected for the "prosecutor's fee" remains "with the County (or the City) and is directed to the County's (or City's) General Fund," which can be spent for "any proper county purpose." *Id.* at *6 & n.5 (citing OCA's "Study of the Necessity of Certain Court Costs and Fees in Texas," *available at* http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf, and Tex. Att'y Gen. Op. No. JM-530 (1986)). In light of *Salinas v. State*, 523 S.W.3d 103, 109 n.26, 110 (Tex. Crim. App. 2017), in

which the court of criminal appeals held that the allocation of funds to general revenue rather than a criminal justice purpose rendered local government code section 133.102 facially unconstitutional in violation of the separation of powers clause of the Texas Constitution, our sister court concluded that the $25 assessment was likewise unconstitutional. *Hernandez*, 2017 WL 3429414, at *6–7. The court reiterated that the fact that the $25 prosecutor's fee *could* be spent on a legitimate criminal justice purpose did not matter because whether a fee is an allowable court cost or an unconstitutional tax is determined when the fee is collected, not when the money is spent. *Id.* (quoting *Salinas*, 523 S.W.3d at 109 n.26). Accordingly, the court modified the trial court's judgment to delete the $25 "district attorney" fee from the bill of costs and affirmed the trial court's judgment as modified. *Id.*

*Hernandez* drew a dissent on the denial of rehearing. *Id.* (Keyes, J., dissenting). The dissent argued that the $25 fee under article 102.008(a) was distinguishable from the fees at issue in *Salinas* because "an 'interconnected' series of statutes directs the prosecutor's fee provided for in article 102.008 to be deposited into a fund in the county treasury and used to pay the prosecuting attorney's salary and expenses." *Id.* The dissent further characterized the statutory scheme as more complex and *Salinas* more nuanced than acknowledged in the majority opinion. *Id.*

Starting with article XVI, section 61, of the Texas Constitution, which provides that all district officers "shall be compensated on a salary basis," Tex. Const. art. XVI, § 61(a), and continuing through various provisions of the local government code, the

13

dissent traced the ultimate destination of the $25 fee as part of the prosecutor's salary fund as follows:

> The district attorney is a district officer. *See* Tex. Att'y Gen. Op. No. MW-252, at *2 (1980) (citing Tex. Att'y Gen. Op. No. H-656 (1975) (concluding that district attorney is district, not county, officer)). Therefore, pursuant to article XVI, section 61, fees earned by a district officer, such as the "prosecutor's fee" provided for in article 102.008(a), must be paid into the account of the proper fund, rather than being paid personally to the prosecuting attorney.[] Tex. Const. art. XVI, § 61(d). The Texas Local Government Code provides that "[a] district . . . officer who is paid an annual salary shall charge and collect in the manner authorized by law all fees, commissions, and other compensation permitted for official services performed by the officer. The officer shall dispose of the collected money as provided by Subchapter B, Chapter 113." Tex. Loc. Gov't Code Ann. § 154.003 (West 2008).

> Subchapter B, Chapter 113 provides that the "fees, commissions, funds, and other money belonging to a county shall be deposited with the county treasurer by the person who collects the money." *Id.* § 113.021(a) (West Supp. 2017). Once the funds are deposited with the county treasurer, the treasurer is directed by statute to "deposit the money in the county depository in the proper fund to the credit of the person or department collecting the money,"[2] here to the officer's salary fund. *See id.* § 113.021(b); *see also* Tex. Att'y Gen. Op. No. GA-0636, at *2 (2008) (noting that any "fees, commissions, or other compensation collected by an officer who is paid on a salary basis are deposited by the treasurer in the applicable salary fund created by Local Government Code chapter 154, which governs the compensation of district, county, and precinct officers paid on a salary basis").

---

[2] Because these are court costs, the court is the "person who collects the money," *see* Tex. Loc. Gov't Code Ann. § 113.021(a) (West Supp. 2018), but the deposit of money in a county treasury does not change the ownership of the money. *Id.* § 113.024 (West 2008); *see also id.* § 113.903(a) (West 2008) (stating that with the prior consent of the commissioners court and the officer to whom funds are owed, a district, county, or precinct officer authorized by law to receive or collect money or other property that belongs to the county may receive or collect, on behalf of another district, county, or precinct officer, money or property owed to the county).

14

Local Government Code Chapter 154 directs the county treasurer to create a salary fund for each district, county, and precinct officer to be known as the "(officer's title) salary fund of (name of county) County, Texas." Tex. Loc. Gov't Code Ann. § 154.042(a) (West 2008). The purpose of the fund is to pay "the salary of the officer," "the salaries of the officer's deputies, assistants, clerks, stenographers, and investigators," and "authorized and approved expenses of the office of the officer." *Id.* § 154.042(a)(1)–(3). The salary fund must be "deposited in the county depository," "kept separate from other county funds," and "protected to the same extent and draw the same interest as other county funds." *Id.* § 154.042(b); Tex. Att'y Gen. Op. No. DM-199, at *2 (1993).

The Local Government Code also authorizes the commissioner's court, at its first regular meeting of the fiscal year, to order that the funds which would otherwise be deposited into an officer's salary fund be deposited into the general fund of the county. *See* Tex. Loc. Gov't Code Ann. § 154.007(a) (West 2008); Tex. Att'y Gen. Op. No. DM-199, at *2. However, if the funds are dedicated by statute to compensate the officer, the commissioners court is not authorized to divert the funds to other uses. *See* Tex. Att'y Gen. Op. No. DM-199, at *3 (concluding that although motor vehicle registration fees collected by county tax assessor-collector were deposited in county's general fund, they could only be used by commissioner's court to compensate tax assessor-collector for services relating to registration of vehicles because fees were dedicated by statute to that purpose).

Local Government Code section 113.047 provides that "[a]fter the deposit of funds in a county depository, an officer in a county with a population of 190,000 or more may draw checks on the county treasurer to disburse the funds as payment for a salary or expenses authorized by law . . . ." Tex. Loc. Gov't Code Ann. § 113.047 (West 2008); Tex. Att'y Gen. Op. No. JM-1074, at *4 (1989). And section 154.043(a) permits "[a] district, county, or precinct officer [to] issue a warrant against the salary fund to pay the salary of an employee whose salary may be paid from the fund." Tex. Loc. Gov't Code Ann. § 154.043(a) (West 2008). "It is therefore clear that fees formerly deposited in officers' salary funds are available to fund the office of the county officer who collected the funds even after their deposit in the county general fund." Tex. Att'y Gen. Op. No. DM-199, at *3.

15

*Id.* (footnote omitted).

Accordingly, the dissent concluded that holding that article 102.008(a) is facially unconstitutional based on OCA's website's indication that the prosecutor's fee is directed to the county's general fund "is unavailing because it fails to account for interrelated statutory provisions directing the fees to a salary fund to be used for a legitimate criminal justice purpose." *Id.* That is, the interrelated statutes "direct[] the fee to be expended as compensation for the prosecuting attorney," which is kept separate from other county funds. *Id.* (citing Tex. Loc. Gov't Code Ann. §§ 154.042–.043).

We agree with the dissent's reasoning, based on its painstaking review of the interrelated statutes that direct the $25 ultimately to payment of the prosecutor's salary—a legitimate criminal justice purpose—and we overrule Tyler's third point. *See id.*; *see also Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014) ("In interpreting statutes, we presume that the Legislature intended for the entire statutory scheme to be effective."), *cert. denied*, 135 S. Ct. 1158 (2015); *Busby v. State*, 951 S.W.2d 928, 930 & n.2 (Tex. App.—Austin 1997) (observing that article 102.008 is the exception to the general rule that code of criminal procedure chapters 102 and 103, which govern the imposition and collection of costs in criminal cases, do not require a defendant to pay for the prosecutor's services), *aff'd*, 984 S.W.2d 627 (Tex. Crim. App. 1998); *cf. Salinas*, 523 S.W.3d at 109 ("And while the court of appeals was correct in saying that interconnected statutes direct the use of the money appropriated to [the

Health and Human Services Commission], the uses to which the money is directed do not relate to the criminal justice system."); *Casas v. State*, 524 S.W.3d 921, 923, 927 (Tex. App.—Fort Worth 2017, no pet.) (holding the $100 court cost for "emergency management services" facially unconstitutional when "[n]either the statute authorizing the collection of the emergency-services cost nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose").

## V. Conclusion

Having overruled all of Tyler's points, we affirm the trial court's judgment.

/s/ Bill Meier
Bill Meier
Justice

Publish
Tex. R. App. P. 47.2(b)

Delivered: November 1, 2018