**Opinion issued February 5, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00441-CR

_____

**BRIAN BLACKBURN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court No. 5**
**Tarrant County, Texas[1]**
**Trial Court Case No. 1488384**

---

## MEMORANDUM OPINION

A jury convicted appellant, Brian Blackburn, of misdemeanor assault

causing bodily injury upon a family member, and the trial court, after finding a

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases between courts of appeals).

single enhancement true, assessed punishment at confinement for 180 days. In two issues on appeal, appellant contends that (1) the trial court erred in denying his requested self-defense jury instruction and (2) that Article 102.008(a) of the Texas Code of Criminal Appeals, which authorizes a $25 "district attorney" fee, is unconstitutional. We affirm.

## BACKGROUND

On February 23, 2017, appellant and his wife, Yolanda Rivas, began to argue about money after Rivas told appellant that she was going to pay her phone bill out of an account the two shared. Appellant was upset with this because he claimed that the money in the account was already committed to other bills and he believed that she should pay the bill out of her own account. When appellant became angry, Rivas began videoing the fight with her cell phone. The video shows appellant going into the bedroom and beginning to look for Rivas's debit card. When appellant realized that the card was not in the purse, he turned to Rivas again and demanded that she give him the card. When Rivas did not comply, appellant reached toward her. The video then cuts out, and here appellant's and Rivas's version of the events begins to differ.

The State presented evidence that appellant grabbed Rivas by the arms, pulled her towards him, grabbed her hair, and threw her on the bed. When Rivas attempted to get up, appellant put his knee in her stomach to prevent her from

doing so. He then began to hit Rivas in the head with both hands, using the palm of his hands. Rivas claimed that a cut on appellant's lip was caused when her phone, which she was still holding, hit him in the face as she defended herself. Rivas was crying for help during the attack, and appellant attempted to cover her mouth to prevent her from yelling for help. However, Rivas's son, who was in the living room, came in to help when he heard Rivas screaming. When Rivas's son entered the room, appellant stopped hitting Rivas and went into the living room. Rivas then called the police and appellant called his sister.

The police questioned both appellant and Rivas and documented the "knots" on her forehead and under her right eye. Rivas told police that she and appellant were fighting about money and that appellant punched her several times. Police looked at the video and concluded that appellant was raising his arms toward Rivas when the video stopped. Appellant told police that Rivas had punched him in the mouth. He also said that she punched herself and that "he would never hit a woman." After speaking with both appellant, Rivas, and Rivas's son, watching the video, and viewing Rivas's injuries, police determined that appellant was the primary aggressor and arrested him.

Appellant presented a different version of the events. He stated that he tried to take Rivas's purse from her so that he could retrieve his bankcard from it, and thatthis explained him reaching for her on the video. Appellant stated that, in

3

response, Rivas punched him in the mouth. He said that he then grabbed Rivas by the shoulders and pinned her on the bed to prevent her from hitting him again. He denied ever hitting Rivas or pulling her hair. Instead, he claimed that she caused the bruises to herself. He claimed that her bloody knuckles were caused when she hit him in the mouth and pointed out to police that he did not have any marks on his own hands. Appellant also presented evidence that Rivas had been arrested on a previous occasion for assaulting him, but that the case was dismissed when he did not go to trial to testify against her. He also presented evidence that Rivas sought to obtain a visa based on being a domestic abuse victim.

Appellant requested a jury charge on self-defense, contending that he presented evidence justifying his actions, i.e., that Rivas hit him first. The trial court denied the requested charge, noting "he just testified for 30 minutes that he never hit her." The trial court also noted that he would sustain an objection by appellant if the State attempted to argue that any of the other conduct admitted to by appellant, such as restraining her and holding her down, was also an assault. The State did not make such an argument, and the jury found appellant guilty of the charged offense. This appeal followed.

## SELF-DEFENSE

In his first issue on appeal, appellant contends that the trial court erred in denying his request for a jury instruction on self-defense. In response, the State

4

contends that self-defense is a confession-and-avoidance defense and that appellant was not entitled to one because his did not admit to the assaultive conduct with which he was charged.

***Standard of Review and Applicable Law***

When reviewing an alleged jury-charge error, appellate courts first determine whether error exists and then, if so, ascertain whether the resulting harm is sufficient to warrant a reversal. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If, as here, the defendant made a timely objection, reversal is required if there has been "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

A person is entitled to act in self-defense to an assault. *See* TEX. PENAL CODE § 9.31(a) ("[A] person is justified in using force against another when and to the degree the actor reasonable believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.").

When determining whether a defensive instruction should have been provided, appellate courts "view the evidence in the light most favorable to the defendant's requested" instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex.

Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue "is raised by the evidence, regardless of the strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013). "A trial court errs in denying a self-defense instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of self defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

Chapter Nine of the Texas Penal Code (which contains the self-defense statute found in sections 9.31) is entitled "Justification Excluding Criminal Responsibility." TEX. PENAL CODE ANN. §§ 9.01–.63. It includes justifications such as self-defense, necessity, and public duty, and explains the justification aspects of protection of persons and property. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). If the conduct in question is justified under one of the provisions of Chapter Nine, it is a defense to prosecution. TEX. PENAL CODE ANN. § 9.02; *see Young*, 991 S.W.2d at 838. However, a defendant is entitled to an instruction involving one of the justification defenses "only . . . when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the

6

otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d at 659. The Court of Criminal Appeals has since held that a defendant is not required to concede the State's version of events and admitting to the conduct does not necessarily mean admitting to every element if the defendant "sufficiently admits" to the commission of the offense. *See Gamino*, 537 S.W.3d at 511–12 (holding defendant charged with aggravated assault with a deadly weapon entitled to self-defense instruction even though he denied pointing his gun at and verbally threatening complainant but admitted displaying weapon because he felt threatened).

Thus, the issue this Court must decide is whether appellant "sufficiently admitted" committing the offense.

*Analysis*

The State argues that appellant did not sufficiently admit the offense because, while he admitted grabbing Rivas by the shoulders and holding her down on the bed after she hit him in the mouth, he denied hitting her with his hand or pulling her hair, as charged in the information set forth in the jury charge.[2]

---

[2]     The misdemeanor information provided in relevant part:

THAT BRIAN BLACKBURN . . . ON OR ABOUT THE 23RD DAY OF FEBRUARY 2017, DID THEN AND THERE INTENTIONALLY OR KNOWINGLY CAUSE BODILY INJURY TO YOLANDA RIVAS, A MEMBER OF THE DEFENDANT'S FAMILY OR HOUSEHOLD OR WITH WHOM THE DEFENDANT HAD A DATING RELATINGSHIP,

7

Appellant counters that he admitted to a different version of events, even though he did not admit to hitting Rivas or pulling her hair.

In *Holloman v. State*, 948 S.W.2d 349 (Tex. App.—Amarillo 1997, no pet.), the defendant testified that he was arguing with his wife, that he attempted to leave the house, that his wife "picked up a butcher's knife," that he "feared that he would 'get killed'" because of his wife's "propensity for violence" against him and others, that his wife put the knife down, that his wife grabbed his shirt, that his wife hit him with her hands, and that the two "'tussled' for approximately ten minutes during which time [the defendant] "repeatedly tried to free himself" before ultimately being able to leave. *Id.* at 351. Considering this testimony, the Amarillo Court of Appeals determined that an instruction should have been given because the testimony indicated, among other things, that the defendant's wife "was the first to use force," that the defendant "feared for his safety," and that the defendant "met force with force." *See id.* Moreover, the court explained that although the defendant did not admit to hitting his wife, his testimony included statements that

BY STRIKING HER WITH HIS HAND, OR BY PULLING HER HAIR WITH HIS HAND[.]

Likewise, the jury charge provided:

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, BRIAN BLACKBURN . . .did then and there intentionally or knowingly cause bodily injury to YOLANDA RIVAS, a member of the Defendant family or household . . . , by striking her with his hand, or by pulling her hair with his hand, then you will find the Defendant guilty as charged in the information.

8

"they 'tussled,'" "that he may have hit her with his legs," and that "he 'fought'" with her. *See id.* at 352. Because the record supported a determination that the defendant conceded to hitting his wife and thereby to causing her bodily injury, the Amarillo court explained that the evidence demonstrated that the defendant used "force" to repel the attack of another as described by the Penal Code. *See id.* (citing TEX. PENAL CODE ANN. § 9.31(a)). The court held that "[the self-defense statute] says nothing of admitting to the mode or type of 'force' averred in the charging instrument; all that it contemplates is that 'force' was used." *Id.*

However, we need not decide whether appellant is required to admit that he hit Rivas or pulled her hair, as charged, or whether his admission that he held her down by her shoulders is sufficient to raise self-defense, because in this case he denies another critical element of the offense. Appellant denies that he caused *any* bodily injury to Rivas, arguing instead that "the injuries suffered by Ms. Rivas were self-inflicted, as she had punched herself in the face." Specifically, appellant told Officer Sanchez, who responded to the dispatch, that Rivas "had punched herself . . . and that's how she sustained the injuries on her face." When asked to explain why Rivas's forehead was swollen in the pictures taken after the incident, appellant replied, "She's done that to herself before" and demonstrated to the jury how Rivas had "done it to herself." He further testified, "I never assaulted [Rivas]. Never in the three-and-a-half years we were together have I assaulted her." As

9

such, appellant is not arguing that self-defense justified his injury of Rivas; he is arguing that she injured herself and that he committed no offense at all because he did not cause her bodily injury. He also presented evidence that Rivas had a motive to injure herself so that she could apply for a visa as a domestic abuse victim.

Even if we were to agree with the *Holloman* reasoning, we find that it is distinguishable because here, appellant not only denied the type of force he used, he denied causing bodily injury at all. Because appellant did not sufficiently admit committing the offense, the trial court did not err by refusing his requested self-defense instruction. Accordingly, we overrule issue one.

## CONSTITUTIONALITY OF ARTICLE 102.008(a)

Article 102.008(a) of the Texas Code of Criminal Procedure provides, with an exception not applicable here, that "a defendant convicted of a misdemeanor . . . shall pay a fee of $25 for the trying of the case by the district or county attorney." TEX. CODE CRIM. PROC. ANN. art. 102.008(a). In issue two, appellant contends that article 102.008(a) is an unconstitutional tax because it is not expended on a legitimate criminal justice purpose but goes to the County's general fund.

While this appeal was pending, the Second Court of Appeals has held that article 102.008(a) is constitutional because of several interrelated statutes "that direct the $25 ultimately to payment of the prosecutor's salary—a legitimate criminal justice purpose[.]" *Tyler v. State*, 563 S.W.3d 493 (Tex. App.—Fort

10

Worth 2018, no pet.) We note that this Court has held to the contrary. *See Hernandez v. State*, No. 01-16-00755-CR, 2017 WL 3429414, at *7 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet.). However, "the court of appeals to which [a] case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court." TEX. R. APP. P. 41.3. Applying, as we must, the Second Court of Appeals' precedent in *Tyler*, we overrule issue two. We note that, had this Court not been required to decide the case in accordance with precedent from the Second Court of Appeals, the outcome on this issue would have been different. *Id.*

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b)

11